BRISTOL LABORATORIES DIVISION
OF BRISTOL–MYERS
COMPANY, Plaintiff,

v.

Elmer B. STAATS, Comptroller General
of the United States, Defendant,

and

United States of America,
Intervenor-Defendant.

No. 75 Civ. 1334.

United States District Court,
S. D. New York.

April 8, 1977.

Weil, Guttman & Davis, New York City, for plaintiff; Gilbert H. Weil, Robert L. Sherman, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant and intervenor-defendant; Naomi Reice Buchwald, Asst. U. S. Atty., New York City, J. Roger Edgar, Dept. of Justice, John Brosnan, of counsel.

## MEMORANDUM

LASKER, District Judge.

This case arises out of a dispute between Bristol Laboratories Division of Bristol-Myers Company (Bristol) and Elmer B. Staats, Comptroller General of the United States, regarding the scope of Staats' contractual right to inspect Bristol's books and records. Bristol and the United States, as intervenor-defendant, seek a declaration of their respective rights and a corresponding injunction. The parties have renewed cross-motions for summary judgment.[1] Since no disputed issues of fact remain, the case is ripe for determination.

In 1973 and 1974 Bristol was awarded three negotiated fixed-price contracts for the sale of prescription drugs to the Defense Supply Agency. Pursuant to the provisions of 10 U.S.C. § 2313(b)[2] all three

---

1. By Memorandum dated December 14, 1975 the original cross-motions were denied without prejudice because of insufficient data and the appearance of a material dispute regarding Bristol's accounting methods. The necessary discovery is now complete, and the facts have been clarified.

2. 10 U.S.C. 2313(b) provides:

   "(b) Except as provided in subsection (c), each contract negotiated under this chapter shall provide that the Comptroller General and his representatives are entitled, until the expiration of three years after final payment,

contracts contain a so-called access to records clause, ·which in pertinent part provides:

> "[Bristol agrees] that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of three years after final payment [under this contract] . . have access to and the right to examine any directly pertinent books, documents, papers, and records of [Bristol] involving transactions related to such contract."

In 1973 Bristol obtained a similar contract with the Veterans Administration which, pursuant to 41 U.S.C. § 254(c),[3] contains an identical access to records clause. Final payment on all of these contracts was complete by the end of July, 1974.

By letter dated August 26, 1974 Staats formally requested Bristol to make available to him cost records relating to the four contracts. He explained that the request was one of several directed at companies which supply pharmaceuticals to federal government agencies as part of a general review of drug procurement being undertaken by the General· Accounting Office (GAO). He alluded to recent attempts by the GAO to conduct a comprehensive study of pricing practices in the pharmaceutical industry and the refusal of the drug manufacturers voluntarily to supply the information requested. Staats specified that he wished to inspect certain records including

> ". . . but not limited to (1) records of experienced costs including costs of direct materials, direct labor, overhead, and other pertinent corporate costs, (2) support for prices charged to the Government, and (3) such other information as may be

necessary for use to review the reasonableness of the contract prices and the adequacy of the protection afforded the Government's interests." (Staats Letter, August 26, 1974; Exhibit A, Weil Affidavit).

Bristol responded that it was agreeable to providing records "deemed pertinent" to the contracts. (Purdy Letter, September 13, 1974; Exhibit B, Weil Affidavit) In the ensuing months, however, after further correspondence and meetings between GAO and Bristol personnel, it became apparent that there were irreconcilable differences regarding the proper scope of the GAO review. The differences ˙focus on the GAO's right to examine records pertaining to the costs of research and development, marketing and promotion, distribution and administration.

Bristol agrees that it is obliged by the terms of the contracts to provide access to records of its manufacturing costs, records which relate to the pricing of the products delivered and records required to verify all data obtained during the course of the review. Accordingly, Bristol states that it is ready and willing to allow GAO personnel to inspect its books and records with regard to the following items, which it lists as factors taken into account in setting prices to the government: manufacturing costs (including raw and packaging materials, labor and fringe benefits, quality control and supervision); manufacturing overhead (including plant administration, production planning, warehousing, utilities and security); royalty expenses; and delivery costs. However, it strenuously resists producing data with respect to research and develop-

---

to examine any books, documents, papers, or records of the contractor, or any of his subcontractors, that directly pertain to, and involve transactions relating to, the contract or sub-contract."

**3.** 41 U.S.C. 254(c) provides:
"(c) All contracts negotiated without advertising pursuant to authority contained in this chapter, chapter 11C of Title 5, chapter 10 of Title 40, and chapter 11 of Title 44 shall

include a clause to the effect that the Comptroller General of the United States or any of his duly authorized representatives shall until the expiration of three years after final payment have access to and the right to examine any directly pertinent books, documents, papers, and records of the contractor or any of his subcontractors engaged in the performance of and involving transactions related to such contracts or sub-contracts."

ment, marketing and promotion, distribution and administration (except to the extent that these areas may be included in the factors listed above), because it claims that these costs are too remote to the contracts and have only the most general relation, if any, to the prices charged.

The United States insists that the GAO may inspect Bristol's records with respect to any and all costs met in whole or in part from revenues earned on the federal contracts, whether or not those costs are specifically assigned by Bristol to the contracts or the products delivered. According to the government the test is simply "whether the burden of [the] costs is borne by the Government in the prices it must pay for the contract items." (Government's Memorandum, August 29, 1975 at 13)

The Government's theory has far reaching implications. The only items excludable from the Comptroller General's reach would be those, if any, which relate to costs recovered exclusively from non-government contracts. (Government's Memorandum, August 29, 1975 at 13) It is undisputed, however, that Bristol does not separately compute the cost of government and non-government contracts or pay for them out of separate funds. Accordingly, there are no excludable records under the Government's theory. Indeed, the company does not compute the costs attributable to any particular contract. It does allocate certain direct costs, for manufacturing and overhead, by product. Records of these expenses are thus readily available and are among those the company concedes to be discoverable. Its other expenses are not allocated at all; they are pooled and met out of gross revenues. In other words, revenues from government contracts are co-mingled with revenues from non-government contracts, and the resulting fund is used to pay for all expenses. If the government's interpretation of the access to records clause is correct, Bristol will be required to make available virtually all of its books and records, because although it is impossible to trace the use of government dollars, those dollars contribute to the fund from which all of the company's expenses are paid.

Such a result would be inconsistent with the language of the access to records clause and the statutes pursuant to which the clause was included in the contracts. The clause provides that GAO representatives may examine "directly pertinent books, documents, papers and records . . . involving transactions related to [the] contract." (Emphasis supplied) This language is taken almost verbatim from the statutes which require the clause in all fixed-price negotiated contracts. 10 U.S.C. § 2313(b) requires that all such contracts with Defense agencies must provide that the GAO may examine all records "that directly pertain to, and involve transactions relating to, the contract." (Emphasis supplied) Similarly, 41 U.S.C. § 254(c), which controls the contract with the Veterans Administration, requires that provision be made for inspection of "any directly pertinent books . . . of the contractor . . . involving transactions related to such contracts." (Emphasis supplied) All of the underscored phrases are words of limitation. It is a distortion of the language to argue that these words permit GAO officials to discover virtually everything there is to know about the structure of the contractors' business. The reasonable assumption is that if Congress had wished to condition the receipt of a fixed-price negotiated contract on the contractors' agreement to allow such unusual and unfettered government inspection of their business records, it would have done so explicitly.

There is an additional important reason for rejecting the government's interpretation. Although the access to records clause has its origins in statute, it is nevertheless a contractual provision. We are thus confronted with the task of construing the contracts, a task which turns on the intent and understanding of the parties regarding the import of the access to records clause at

the time the contracts were entered. The government's position is particularly unrealistic when viewed in this light. It is inconceivable that Bristol, or any contracting firm, could have understood this clause to authorize the sweeping power of inspection claimed by the GAO. As a matter of contractual construction, the government's argument falls of its own weight.

The government's contention that Bristol is obligated to open all of its books and records for perusal was implicitly rejected by the court in *Hewlett-Packard v. United States,* 385 F.2d 1013 (9th Cir.), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1184, 19 L.Ed.2d 1292 (1967), the single reported decision construing the access to records clause. The court's discussion clearly reflects its conclusion that an order granting the Comptroller General access to a contractor's books "without limitation" would contravene the limiting language in the statutes and the clause itself. 385 F.2d 1015–16.[4] In *Hewlett-Packard* the court simply ordered the contractor to make available records relating to its production costs, over the contractor's argument that this information is not "directly pertinent" to the contract because production costs were not taken into account in arriving at the terms and conditions of the contracts in question. Since production costs are among the items Bristol has agreed to provide, the decision in *Hewlett-Packard* is of no positive aid in resolving the instant controversy.

Having rejected the government's position, it remains to determine the appropriate scope of the Comptroller General's examination. He is, of course, entitled to examine all "directly pertinent records involving transactions related to the contract." Although these words give general guidance, they do not provide answers to the specific questions which arise in the context of each case. We agree with the government that the issue should not depend entirely on a contractor's bookkeeping method, i. e., whether it does or does not assign particular costs to particular contracts or products. However, we do not understand this to be Bristol's contention. As set forth above, Bristol allocates only the direct costs of manufacture by product. These are among the costs it offers to make available, but they are by no means the limit of its offer. Rather, Bristol is willing to provide all records relating to manufacturing costs and the pricing of the products sold to the government. The specific list of items Bristol offers to make available, set forth at page 1389, *supra,* appears to reflect a responsible and reasonable effort to distinguish "directly pertinent" matter within the meaning of the access to records clause. It represents a sensible point at which to draw the line.

For the foregoing reasons, Bristol's motion for summary judgment is granted, and the government's motion is denied.

Submit judgment on notice.

---

4. Nor can the government draw support from the unreported decision in *Eli Lilly and Company v. Staats,* No. IP75–72—(S.D. Inc. Nov. 30, 1976), a case which, like the instant controversy, also grew out of Staats' attempt, in August, 1974, to use the access to records clause to obtain detailed information relating to the structure of the pharmaceutical industry. Lilly was evidently willing to disclose far less information than Bristol and presented a number of facts and legal arguments which Bristol has not put forth. The court granted Lilly's motion for summary judgment, ruling that Staats' request exceeded his authority, was of doubtful constitutionality and far exceeded the scope of the access to records clause. It permitted Staats to examine only those files and records relating specifically to the government contracts and only to the extent necessary to determine the relation between the standard catalogue price of the products and the prices charged to the government.