MERCK & CO., INC., Plaintiff,

v.

Elmer V. STAATS, Comptroller General
of the United States, Defendant,

and

The United States of America,
Intervenor-Defendant.

Civ. A. No. 74–1447.

United States District Court,
District of Columbia.

Aug. 12, 1977.

Philip A. Lacovara, Washington, D. C.,
for plaintiff.

Earl Silbert, U. S. Atty., Irving Jaffe and
J. Roger Edgar, U. S. Dept. of Justice,
Washington, D. C., for defendant & interve-
nor-defendant.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

This is an action in which plaintiff Merck
& Co., Inc., a New Jersey corporation that
manufactures, distributes, and sells phar-
maceutical products, seeks a judgment de-
claring that defendant Comptroller General
of the United States lacks authority to ex-
amine certain records pertaining to Merck's
cost structure and corresponding injunctive
relief. The Comptroller claims a right to
review all of plaintiff's records relating to
four contracts, negotiated without advertis-
ing, for sale of pharmaceutical products to
the Department of Defense and the Veter-
ans Administration. The right, both sides
agree, derives from 10 U.S.C. § 2313(b) and
41 U.S.C. § 254(c), which require that the
following language appear in government
contracts negotiated without advertising:

> The Contractor agrees that the Comptrol-
> ler General . . . shall . . . have access to
> and the right to examine any directly
> pertinent books, documents, papers, and
> records of the Contractor involving trans-
> actions related to this contract.

Each of the four contracts involved in this
case contains such a provision.

The dispute centers on the scope of the
Comptroller General's authority. Merck
contends that since the contract prices were
not cost based, the records the Comptroller
seeks to examine do not "directly pertain"
to the prices paid by the Government, and
therefore are not subject to disclosure.
Also, Merck contends that the purpose of
these contractual provisions is to enable the
Government to ensure that the prices it
pays are reasonable and appropriate. Here,
says Merck, the Government has no such
purpose in mind but seeks instead to gain
access to Merck's records in order to con-
duct an economic survey of the pharmaceu-
tical industry. Defendants see matters dif-
ferently. They interpret the scope of the

Comptroller's authority broadly, and they demand from Merck

> all books, documents, papers, and other records directly pertinent to the contracts, which includes, but are not limited to (1) records of experienced labor costs including costs of direct materials, direct labor, overhead, and other pertinent corporate costs, (2) support for prices charged to the government, and (3) such other information as may be necessary for use to review the reasonableness of the contract prices and the adequacy of the protection afforded the Government's interests.

Defendants contend that the "survey proposed by the Comptroller is being conducted *in order to determine the adequacy of protection afforded the Government by negotiating techniques used by the procuring agencies*," Reply Memorandum of the United States at 9 (emphasis in original); *see also* Ahart Affidavit, para. 13; that facilitation of such a determination was one of the primary purposes underlying 10 U.S.C. § 2313(b) and 41 U.S.C. § 254(c), *see e.g.*, H.R. 2574, 97 Cong. Record 13198 (Daily ed. Oct. 15, 1951); and that persuasive authority for broad construction of the contractual provisions exists in *Hewlett-Packard Company v. United States*, 385 F.2d 1013 (9th Cir.), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1184, 19 L.Ed.2d 1292 (1967).

*Hewlett-Packard, supra,* is the sole decision by an appellate court that interprets the statutory language involved in this case. There Hewlett-Packard had entered into several negotiated fixed-price contracts with the Department of the Air Force. As 10 U.S.C. § 2313(b) commands, each of the contracts contained a standard access-to-records clause. After performance of the contract, representatives of the Comptroller General demanded from Hewlett-Packard all records

> relating to the pricing and cost of performance, support for prices charged to the Government, and such other necessary information which would permit such Representatives to review the reasonableness of the contract prices provided for in the aforesaid contracts.

385 F.2d at 1015. Although, as here, Hewlett-Packard claimed not to consider production costs in arriving at the terms and conditions of the contracts in question, *id.* at 1016, the Court of Appeals affirmed the trial court's determination that the Comptroller's demand was entirely lawful and appropriate. The court acknowledged that the words "directly pertinent to . . . transactions related to this contract" are words of limitation—that an access-to-records clause does not permit open-ended inspection. *Id.* at 1015–1016. The court went on to say, however, that

> the word "contract," as used in the statute is intended to have a broader meaning, embracing not only the specific terms and conditions of the agreement, but also the general subject matter. The subject matter of these four contracts is the procurement of described property by the Government.
>
> Production costs directly pertain to that subject matter, because if out of line with the contract price, the contract may have been an inappropriate means of meeting this particular procurement need of the Government. While this appraisal could not affect these particular contracts, it could lead to the use of other methods of meeting future procurement needs. Production costs involve transactions relating to the contract, because they encompass business arrangements made by the contractor in obtaining the materials, labor, facilities and the like required by it in fulfilling its commitment with reference to the subject matter of the contract.

*Id.* at 1016. Specifically, the Court of Appeals upheld the trial court's declaration that the company's costs of *direct material, direct labor and overhead in producing* the items furnished under the contracts are directly pertinent to those contracts and must be made available to the Comptroller. *Id.* at 1015.

I am satisfied that *Hewlett-Packard* accommodates governmental interest in supervising and controlling the procurement

process in precisely the manner intended by Congress. *See* Senate Report 603, 82nd Congress, concerning Senate Bill 921; statement by Congressman Celler, 96 Cong. Rec. 17123, January 2, 1951. Also, I am satisfied that the survey proposed by the Comptroller in this case, *see* Ahart Affidavit, para. 11–13, will facilitate supervision of the procurement process and is within his authority. Hence I reject the restrictive approach to access-to-records clauses taken in *Eli Lilly and Co. v. Staats*, I P75–72–C (S.D. Inc. November 30, 1976), a post-*Hewlett-Packard* decision relied upon by plaintiff. However, I do find persuasive the further refinement of *Hewlett-Packard* in *Bristol Laboratories Division of Bristol-Myers Co. v. Staats*, 428 F.Supp. 1388 (S.D. N.Y.1977), which, like *Eli Lilly, supra,* involved an access-to-records demand identical to the one at issue here.

In *Bristol* the company had agreed to provide to the Comptroller access to records relating to manufacturing costs (including raw and packaging materials, labor and fringe benefits, quality control and supervision), manufacturing overhead (including plant administration, production planning, warehousing, utilities and security), royalty expenses, and delivery costs. *Bristol, supra,* Memorandum Order at 1389. Bristol contended that data concerning research and development, marketing and promotion, distribution and administration (except to the extent such data relate to the cost items listed above) were too remote to be considered "directly pertinent" to its contracts with the Government. The court agreed with Bristol's position, stating:

> The specific list of items Bristol offers to make available ... appears to reflect a responsible and reasonable effort to distinguish "directly pertinent" matter within the meaning of the access to records clause. It represents a sensible point at which to draw the line.

*Id.* at 1391. Particularly instructive is the court's observation that,

> Although the access to records clause has its origins in statute, it is nevertheless a contractual provision. We are thus con-

fronted with the task of construing the contract, a task which turns on the intent and understanding of the parties regarding the import of the access to records clause at the time the contracts were entered. The government's position [which the court saw as open-ended] is particularly unrealistic when viewed in this light. It is inconceivable that Bristol, or any contracting firm, could have understood this clause to authorize the sweeping power of inspection claimed by the GAO.

*Id.* at 1390–1391. These principles, taken together with those enunciated in *Hewlett-Packard,* have guided me in construing the contracts at issue in this case. The line drawn by the *Bristol* court appears to me a realistic interpretation of the intent of the parties in this case as well.

For these reasons it is this 11th day of August, 1977

ORDERED, that the motions for summary judgment by defendant and defendant-intervenor are granted in part and denied in part as outlined below; and it is

FURTHER ORDERED, that motion of plaintiff Merck and Co., Inc. for summary judgment is granted in part and denied in part as outlined below; and it is

FURTHER ORDERED, that the Comptroller General of the United States and his duly authorized representatives have the right to examine, on the premises of Merck, Rahway, New Jersey, and its other principal offices wherever located, at a time and date mutually agreed upon by the parties, all books, documents, papers, or records directly pertaining to the pricing and cost of producing the items furnished by plaintiff Merck under the following contracts numbered: V797P–5077(C), DSA120–74–C–0680, DSA120–74–C–1813, and DSA120–73–D–2842, including manufacturing costs (including raw and packaging materials, labor and fringe benefits, quality control and supervision), manufacturing overhead (including plant administration, production planning, warehousing, utilities and security), royalty expenses, and delivery costs; and it is

FURTHER ORDERED, that defendant Comptroller General shall not demand access to books, documents, papers, or records with respect to research and development, marketing and promotion, distribution, and administration (except to the extent such data may be included in the cost items listed above); and it is

FURTHER ORDERED, that every book, report, paper, record, and other document (all hereinafter referred to as "document"), designated as confidential by Merck or any of its divisions or subsidiaries and provided or otherwise made available to the Comptroller General or any of his successors, agents, employees, or subordinates (all hereinafter referred to as "the Comptroller General"), and every summary thereof and extract therefrom, and all data and information contained therein, including accountants' work papers (all hereinafter referred to as "data"), shall be held in confidence and shall not be provided or otherwise made available by the Comptroller General to any person or agency outside the General Accounting Office except as provided in subparagraphs (a) and (b), below. No copies of Merck's documents shall be included in accountants' work papers without the approval of Merck.

Any document and data referred to in the above paragraph shall be used by the Comptroller General solely for the purpose of a contract study. Upon completion of that study, the Comptroller General shall immediately return to Merck all documents described in that paragraph. Any data in which Merck, any of its divisions or subsidiaries, or any product manufactured or sold by any of them are or may be directly or indirectly identified which the Comptroller General deems it necessary to retain shall be retained by the General Accounting Office and deposited with and maintained by the Comptroller General under security measures to be agreed upon by the parties. Access to such data by any person shall be permitted only upon written authorization of the Comptroller General, and as limited in the subparagraphs following next denominated (a) and (b).

(a) Any of the data referred to in the above paragraph may be published, provided to, or otherwise made available to a person or agency outside the General Accounting Office if the data are published, provided, or made available so that any direct or indirect identification of Merck, any of its divisions or subsidiaries, or any product manufactured or sold by any of them, is not reasonably possible. Merck shall be afforded a reasonable opportunity to examine and offer its comments regarding any data considered for release, including any report issued by the Comptroller General that includes such data, before release of the data or report.

(b) The Comptroller General may comply without regard to the limitations of this Order set forth above, with an official written request for any of the data referred to above submitted to him by either House of Congress, or any committee of the House of Representatives or the Senate, or any joint committee of the two Houses, having jurisdiction over the subject matter of the study referred to in the Affidavit of Gregory J. Ahart filed in this action, to the extent authorized and directed by law. The Comptroller General will cause prompt notice of any such request to be given to Merck and to this Court at least seven calendar days prior to furnishing the data requested, and it is

FURTHER ORDERED, that the Comptroller General and the United States shall notify Merck promptly of any request for disclosure, subpoena *duces tecum*, civil action, or other order or application for an order seeking production, release, or disclosure of any data referred to above, and further agree to use their best efforts to protect the confidentiality of such data, except as provided above, including resort to appropriate judicial remedies and cooperation with Merck in such efforts, and it is

FURTHER ORDERED, that the Court shall retain jurisdiction to interpret and enforce the terms of this Judgment, upon application of any party, and it is

FURTHER ORDERED, that each party shall bear its own costs.